IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **ROGER JOHNSON** | § | **PLAINTIFF** |
| | § | |
| v. | § Civil No. 1:06CV797HSO-JMR | |
| | § | |
| **NORTHROP GRUMMAN** | § | |
| **SHIPBUILDING, INC.** | § | **DEFENDANT** |

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THIS MATTER COMES BEFORE THE COURT on a Motion for Summary Judgment filed by Defendant Northrop Grumman Shipbuilding, Inc.[1] ["NGSB"] on October 15, 2010 [409-1]. To date, Plaintiff, Roger Johnson ["Johnson"], has not tendered a Response.[2] After due consideration of the record, the submissions on file, and the relevant legal authorities, the Court finds that because Johnson is unable to maintain his claims as a matter of law, NGSB is entitled to summary judgment.

I. FACTS AND PROCEDURAL HISTORY

A.   Procedural History

An initial Complaint [1-1] was filed in this Court on March 21, 2001, and a First Amended Complaint [2-1] was filed on April 26, 2001, naming eleven (11)

---

[1] Counsel for Defendant filed a Motion to Substitute Party on September 20 2010. The Court granted said Motion as unopposed and Defendant's name in the style of the case was changed from "Northrop Grumman Ship Systems, Inc." to "Northrop Grumman Shipbuilding, Inc."

[2] On November 17, 2010, the Court entered a text order granting Johnson a final opportunity to file a response in opposition to NGSB's Motion.

individuals and the Ingalls Workers for Justice as Plaintiffs. Johnson was not a named Plaintiff in the original suit.[3] Named Defendants were Ingalls Shipbuilding Company, Litton Industries, and Northrop Grumman. As detailed in its Memorandum Opinion [16-1] of February 27, 2002, and pursuant to its Judgment of February 28, 2002 [17-1], the Court dismissed Plaintiffs' Thirteenth Amendment and Title VII claims, dismissed Litton Industries and Northrop Grumman as Defendants, dismissed Ingalls Workers for Justice as a Plaintiff and dismissed Plaintiffs' class action claims.

On July 16, 2002, by way of a Motion for Leave to File a Complaint in Intervention [27-1], putative class members requested leave to intervene as Plaintiffs in this action, pursuant to Federal Rule of Civil Procedure 24. A second Amended Complaint was filed on April 7, 2003. Subsequently, NGSB's Motion to Sever was granted by Order entered August 17, 2006 [360-1], which required Plaintiffs to file separate complaints. Following severance of his claims, Johnson filed his Complaint on September 29, 2006.

In 2008, the Court entered an Order administratively closing all NGSB cases while the claims of all but fourteen [14] NGSB plaintiffs were heard and resolved through arbitration. Johnson was one [1] of the fourteen [14] who opted out of the arbitration proceedings. Upon conclusion of the various arbitrations, on June 16,

---

[3]Johnson was one [1] of one hundred forty-three [143] individuals who comprised the Ingalls Workers for Justice and who filed a charge with the Equal Employment Opportunity Commission on January 28, 2000.

2010, the above captioned cause was reopened. Following a status conference held on August 23, 2010, the Court determined that all discovery had been completed, and set this case for trial to commence on the Court's April 2011, calendar.

B.   Factual Background

Roger Johnson was hired by Ingalls Shipbuilding, Inc. [now NGSB], in the 1970's and worked in the pipe department for approximately six months, until he was fired. *See* Pl.'s Dep. at p. 17, att. as Ex. "C" to Def.'s Mot. for Summ. J. In 1990, Johnson reapplied to NGSB and was hired as an insulator. To date, Johnson continues to work in this capacity.[4]

In his Complaint, Johnson seeks injunctive and declaratory relief to prevent alleged systemic and unjustified race discrimination by Defendant with regard to the retention, terms and conditions of employment, treatment, and promotion and transfer of African-American employees. *See* Pl.'s Compl., ¶ ¶ 17-19. Johnson alleges severe, pervasive, and ongoing harassment of African-American employees through longstanding maintenance of a racially hostile work environment. *See id.,* ¶¶ 25-32. In addition to injunctive and declaratory relief, Johnson seeks compensatory and punitive damages. *See id.,* ¶ 1. In its present Motion, NGSB moves the Court to grant summary judgment on all claims asserted in Johnson's

---

[4] Johnson has served as a union steward for twelve years. Pl.'s Dep. at p. 19, att. as Ex. "D" to Def.'s Mot. for Summ. J. Johnson's salary, as a member of the union, is governed by a collective bargaining agreement that has been in place during the twenty year period Johnson has worked at NGSB. Pl.'s Dep. at p. 32, att. as Ex. "C" to Def.'s Mot. for Summ. J.

Complaint.

## II. DISCUSSION

A.     Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure states that the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56.  The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th Cir. 1988).

To rebut a properly supported motion for summary judgment, the opposing party must present significant probative evidence, since there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *Booth v. Wal-Mart*, 75 F. Supp. 2d 541, 543 (S.D. Miss. 1999).  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The nonmovant may not rely on mere denials of material facts, nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda.  *Booth,* 75 F. Supp. 2d at 543.

The mere existence of a disputed factual issue does not foreclose summary

judgment. The dispute must be genuine, and the facts must be material. *Booth v. Wal-Mart Stores, Inc.*, 75 F. Supp. 2d 541, 543 (S.D. Miss. 1999). With regard to "materiality," only those disputes or facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. *Id.* at 543 (*citing Phillips Oil Company v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987)). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . . all other contested issues of fact are rendered immaterial." *Id.* (*quoting Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1987)).

B.   Johnson's Claims

Johnson's racial discrimination claims fall into three categories: (1) denial of promotions and demotions; (2) retaliation; and (3) hostile work environment. The Court will analyze each in turn.

   1. Failure to Promote

Johnson, an African-American, specifically charges that he has never been promoted by NGSB, and that he was further denied promotions and transfers because of his race. He claims that Caucasian employees with less training and experience at NGSB routinely received promotions. Pl.'s Compl., ¶¶ 21-23, at p. 6. The Complaint asserts that Johnson "made it known that he has been interested in being selected for the position of 'leaderman' or 'half-hat', however, Plaintiff has never been selected." *Id.* No additional evidence has been submitted in support of

this claim. NGSB contends that since his employment as an insulator, which began in 1991, Johnson "has never applied for any other position or promotion." Def.'s Mem. Br. in Supp. of Mot. for Summ. J. at p. 4.

In order to establish a *prima facie* case of discrimination for failure to promote, Johnson must establish each of the following four elements: 1) that he is a member of the protected class; 2) that he sought and was qualified for the position; 3) that he was rejected for the position; and 4) that the employer continued to seek or promoted applications with plaintiff's qualifications. *Davis v. Dallas Area Rapid Transit,* 383 F.3d 309, 317 (5th Cir. 2004)(*citing Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 354-55 (5th Cir. 2001)).

In his deposition, Johnson was questioned about being denied the position of work leaderman:

> Q: Is there any specific work leaderman position that you claim you were denied because of your race?
> A: No, not no specific. I said that I applied for one verbally.
> Q: Why have you not asked anybody since then if you could be a work leaderman?
> A. Well, I feel [sic] like it wouldn't really make too much difference because they really pick the peoples [sic] who they really want.
> Q: ...do you know whether the people who have been appointed have told people in management that they would like to have that position?
> A. No, I don't know.

Pl.'s Dep. at pp. 27-28, att. as Ex. "C" to Def.'s Mot. for Summ

Johnson's testimony further revealed that he has previously worked for Donald Ashford and Terry Street, two different African-American supervisors, and that he

-6-

never asked either of them if he could be a work leaderman. *Id.* at p. 29. In order to recover on a failure to promote claim, Johnson must prove that he both sought a position and was rejected. *Davis,* 383 F.3d at 316.

The competent summary judgment evidence demonstrates that Johnson did not seek a promotion; therefore he was not denied a promotion. NGSB is entitled to judgment as a matter of law on these claims inasmuch as there are no existing questions of material fact.

2. Racial Job Tracking

Johnson further contends that he was subjected to "racial job tracking" by being assigned jobs which were more difficult, dirtier, and/or more dangerous than those of white employees. Compl. ¶ 23. He alleges that he has been forced to work in more cramped, congested, and dangerous quarters while similarly situated white employees were allowed to work "up-top". *Id.* at p. 7. No evidence has been submitted in support of this claim.

"Adverse employment actions have been held to include ultimate employment decisions, such as hiring, granting leave, discharging, promoting, and compensating. They have been held inapplicable to minor management decisions such as negative reference giving." *Thompson v. Sanderson Farms, Inc.*, 2006 WL 2711497, *8 (S.D. Miss. Sept. 21, 2006). NGSB avers that Johnson receiving unwanted job assignments falls within the category of a minor management decision. Def.'s Mem. Br. in Supp. of Mot. for Summ. J. at p. 10.

Based on the record before the Court and the lack of competent summary

judgment evidence to support Johnson's positions, NGSB is entitled to summary judgment on this claim.

3. Retaliation Claim

Johnson further asserts that he has experienced numerous harassing and retaliatory actions, including: 1) being reassigned work duties six times in one week on the basis of his race; 2) receiving an unjustifiable review following Johnson's action of filing grievances regarding overt racist behavior; and 3) being forced into undesirable positions. Pl.'s Compl., ¶ 24, a-c. Johnson further maintains that NGSB retaliated against him for opposing discriminatory practices. Specifically, he alleges as follows:

> a) Since March 2002, plaintiff has experienced numerous harassing and retaliatory actions. In 2003, plaintiff was moved from one ship assignment to another, including one week during which he was switched six times, including three times in one day. Plaintiff was not accorded the mandatory five day notice before being transferred as a union steward.
> b) On or about 1999, plaintiff filed a grievance with the union about Robbie Thompson's overt racist behavior towards him. Plaintiff was subjected to an indiscriminate and unjustified review by Mr. Thompson.
> c) On or about 1999, plaintiff filed a grievance with the union about the hostile work environment discrimination and retaliation to which he was subject, including forcing him into the most undesirable jobs, as a form of retaliation, and forcing him to perform a two-person job by himself.

Compl. ¶ 24; Pl.'s Second Supp. Resp. to Interrogatory No. 39 at pp. 9-11, att. as Ex. "E" to Def.'s Mot. for Summ. J.

In order to establish a *prima facie* case of retaliation, Johnson must show:

> (1) that he participated in an activity protected by Title VII; (2) that his employer took an adverse employment action against him; and (3) that a causal connection exists between the protected activity and the adverse employment action.

*Harris v. Mississippi Transp. Commission,* 329 F.App'x 500, 555-56 (5th Cir. 2009)(*citing McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007)).

If Johnson establishes a *prima facie* case, the burden shifts to NGSB to offer a legitimate, non-retaliatory reason for the adverse employment action. *Id.; see also Harvill v. Westward Communications*, 433 F.3d 428, 439 (5th Cir. 2005). If NGSB articulates such a reason, the burden shifts to Johnson to demonstrate that the proffered reason is merely a pretext for an actual retaliatory purpose. *McCoy*, 492 F.3d at 556-57.

In reviewing the record, it is unclear what, if any, adverse employment action Johnson suffered. Johnson's vague allegations that he has never been promoted cannot be reconciled with the uncontradicted evidence that Johnson never completed any application or otherwise applied for a promotion. Even if the record could be deemed to support Johnson's claim that he verbally expressed interest in a leaderman position, thereby satisfying the first two *prima facie* requirements, the record is devoid of any evidence demonstrating the existence of a causal connection between Johnson's activity and the failure of NGSB to promote Johnson, or the other alleged retaliatory actions of which he complains.

Johnson offers and relies on essentially nothing more than "mere allegations and subjective beliefs which are void of any evidentiary support and are insufficient to create an inference of discriminatory intent." *Armendarix v. Pinkerton Tobacco Co.*, 58 F.3d 144, 150 (5th Cir. 1995); *see Roberson v. Alltel Info. Services*, 373 F.3d 647, 654

(5th Cir. 2004). The record does not support Johnson's retaliation claim.

    4. <u>Hostile Work Environment Claim</u>

Johnson contends that throughout his employment at NGSB, he was subjected to racial hostilities and intimidation. Specifically, Johnson alleges that:

> he has been exposed to offensive racially derogatory writings, depictions, and/or graffiti, on a constant basis in a number of places at NGSB.

Pl.'s Compl. ¶ 25, p. 7.

Johnson also maintains that he has been exposed to racial epithets and observed nooses in the shipyard, and that NGSB knew of these occurrences but failed to promptly prevent or correct them. Pl.'s Compl. ¶ 26, 27, pp. 8-9. Johnson contends that he is entitled to relief inasmuch as the exposure, during his many years of working at NGSB, to racially derogatory writings, depictions, and graffiti, racial epithets, and hangman's nooses in the workplace, was severe and/or pervasive enough to create an abusive working environment. *Id*. at p. 11.

NGSB moves for summary judgment on Johnson's hostile work environment claim on the grounds that: 1) while Johnson alleges that he overheard racist language, he never once conveyed a complaint or raised concern over the issue to any supervisor, and any evidence of what other employees experienced is irrelevant; 2) while Johnson alleges he observed racist graffiti in the bathroom stalls, he failed to report it; 3) while Johnson allegedly found a noose in the NGSB parking lot, he again failed to report it and instead retained the rope to give to his attorney. Def.'s Mem. Br. in Support of Mot. for Summ. J. at pp. 16-23. In sum, NGSB argues that Johnson has failed to

proffer sufficient evidence to establish that NGSB "knew or should have known" of the alleged racial harassment.

To establish a *prima facie* case of a hostile work environment, Johnson must show that: (1) he belonged to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Ellis v. Principi,* WL 2510620 *3 (5th Cir. 2007)(*citing Frank v. Xerox Corp.,* 347 F.3d 130, 137 (5th Cir. 2003)); *see also Long v. Eastfield College,* 88 F.3d 300, 309 (5th Cir. 1996). "For harassment on the basis of race to affect a term, condition, or privilege of employment . . . it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002); *see also Weller v. Citation Oil & Gas Corp.,* 84 F.3d 191, 194 (5th Cir. 1996)(Title VII's overall goal of equality is not served if a claim can be maintained solely based on conduct that wounds or offends, but does not hinder an employee's performance).

For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, and therefore be actionable, the conduct complained of must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21-22 (1993); *see also Shepherd v.*

*Comptroller of Public Accounts of State of Texas,* 168 F.3d 871, 874 (5th Cir. 1999). Thus, not only must Johnson have perceived the environment as hostile, the conduct must have been such that a reasonable person would find it hostile or abusive. *Id.*

To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance. *Id.* at 23. No single factor is determinative. *Id.*

(a).   Racist Graffiti and Hangman's Nooses

Johnson asserted in his deposition that he has been exposed to racially derogatory writings, depictions, and graffiti on numerous occasions during his tenure at NGSB. Johnson testified that he observed them in the bathroom stalls at NGSB the last day he was there. Pl.'s Dep. at pp. 85-88, att. as Ex. "C" to Def.'s Mot. for Summ. J. On two occasions, Johnson claims that he observed the presence of a hangman's noose in the NGSB shipyard. The first time occurred in 1999, in an engine room after two other employees informed him of it. The second time Johnson observed a noose was in 2004, in the NGSB parking lot. At the time, he did not report this to his supervisors; instead he kept the rope for his attorney. *Id.* at p. 74.

NGSB submits that Johnson's "vague allegation of seeing a noose is far from sufficient to establish a prima facie case of racial harassment." Def.'s Mem. in Support of Mot. for Summ. J., at p. 21. NGSB takes the position that while Johnson alludes

to the nooses being present, he later testified that he encountered a tied rope in the parking lot, and did not report this to anyone at the shipyard. Accepting his testimony as true, this does not rise to the level of sufficiently frequent occurrences which permeated the work environment, to support his hostile work environment claim.

Based on the totality of the circumstances, and although Johnson presents evidence to support his allegations about the atmosphere at NGSB, the evidence offered by Johnson does not create a material fact question precluding summary judgment on Johnson's hostile work environment claim. Johnson, in failing to respond to the instant Motion, has not tendered any additional evidence in support of his contentions which tends to establish the frequency and recurrence of racist graffiti at NGSB, as well as the degree of permanence which, if proven at trial, could serve to trigger a duty on the part of NGSB.

(b).   Racial Epithets

Johnson has stated that while the use of the word "Nigger" has been "judicially determined to be a badge and incident of slavery, . . . these allegations do not represent Plaintiff's experience in the workplace, but he is informed that this occurred to other Black employees." Pl.'s Second Supp. Resp. to Interrogatory No. 60 at pp. 12-13, att. as Ex. "E" to Def.'s Mot. for Summ. J.

The Fifth Circuit has found that a regular pattern of frequent verbal ridicule or insults sustained over time can constitute severe or pervasive harassment sufficient to violate Title VII. *See, e.g., Walker v. Thompson,* 214 F.3d 615, 626 (5th Cir. 2000)

(holding that African-American employees who were subjected to a variety of racial slurs over three-year period raised fact issue as to whether slurs were sufficiently severe or pervasive to violate Title VII); *see also E.E.O.C. v. WC&M Enterprises, Inc.* 496 F.3d 393, 399-400 (5th Cir. 2007). However, the summary judgment evidence before the Court in this case demonstrates that these alleged remarks were made to other African-American employees, and not to Johnson. There is no additional evidence tendered by Johnson that he ever voiced or raised concerns or complaints regarding these statements. The Court is of the opinion that, based upon the evidence submitted and the present record, no questions of material fact exist which preclude summary judgment on this claim. Therefore, Defendant's Motion should be granted.

### III. CONCLUSION

The Court concludes that Johnson has not met his burden of demonstrating that his failure to promote, racial job tracking, retaliation, and hostile working environment claims can withstand summary judgment.

**IT IS, THEREFORE, ORDERED AND ADJUDGED,** that, for the reasons more fully cited herein, the Motion of Defendant, Northrop Grumman Shipbuilding, Inc., filed October 15, 2010 [409-1], for Summary Judgment, should be and hereby is **GRANTED,** and Johnson's claims against Defendant should be dismissed with prejudice.

**SO ORDERED AND ADJUDGED**, this the 17th day of March, 2011.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE
